United States Court of Appeals
Fifth Circuit

**F I L E D**

June 1, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30756

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROLAND MATURIN,

Defendant-Appellant.

_____

On Appeal from the United States District Court for the
Western District of Louisiana, Lafayette Division,

_____

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Appellant Roland Maturin pleaded guilty to one count of concealing assets in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(1). Maturin now challenges the district court's restitution order as excessive. For the reasons set forth below, we VACATE the district court's order of restitution and REMAND.

1

**I.**

Appellant Roland Maturin was the president of RAM Industries, Inc., a marine construction company. On August 4, 1998, Maturin caused RAM to file a voluntary Chapter 11 bankruptcy petition. On that same day, Maturin opened a bank account in the name of RAM Industries with Farmers Merchants Bank and Trust Company. Maturin failed to disclose the existence of that account to RAM's creditors and to the United States Trustee. Between August 5, 1998 and April 29, 1999, Maturin made a number of deposits into the account in order to fraudulently conceal from creditors and the United States Trustee funds that were, in reality, property of the bankruptcy estate. According to the pre-sentence investigation report, the sum total of these deposits was $164,988.98.

A creditor of RAM Industries eventually became aware of the concealed account, and Maturin was indicted on August 14, 2003. The indictment charged Maturin with 28 counts of unlawful concealment of assets, in violation of 18 U.S.C. § 152(1) (one count for each allegedly fraudulent deposit to, or disbursement from, the concealed account between August 5, 1998 and April 29, 1999), and one count of making a false statement under oath, in violation of 18 U.S.C. § 152(2). On March 16, 2005, pursuant to a plea agreement with the government, Maturin

3

pleaded guilty to count 1 of the indictment, which charged Maturin with making a fraudulent deposit of $54,384.43 into the concealed account on August 6, 1998. Under the terms of the plea agreement, the government agreed to dismiss counts 2-29 of the indictment against Maturin.

In the factual basis for his guilty plea, Maturin admitted that he concealed assets from the creditors of RAM Industries and the United States Trustee from August 5, 1998 through April 29, 1999, and that the August 6, 1998 deposit was "[o]ne of the deposits which should have been included and/or reported to the bankruptcy estate, creditors and trustee." In addition, in response to a question from the district court during his plea colloquy, Maturin stated that he believed that he had deposited a total of roughly $130,000 in the concealed account, but that he was not sure of the exact amount. Maturin's plea agreement with the government did not mention restitution, and the district court did not discuss the possibility of restitution with Maturin during his plea colloquy.

Before Maturin was sentenced, the probation officer issued a pre-sentence investigation report, which recommended that the court order Maturin to pay restitution in the amount of $164,988.98. That figure represented the total amount of funds

4

that Maturin allegedly deposited into the concealed account between August 5, 1998 and April 1, 1999. Maturin did not file any objections to the pre-sentence investigation report. On July 13, 2005, the district court sentenced Maturin to 21 months in prison, to be followed by 3 years of supervised release. The district court also ordered Maturin to pay $164,988.98 in restitution to the bankruptcy court.

Maturin did not object to the district court's restitution order at the time of sentencing. On this appeal, however, Maturin asserts that the restitution order exceeded the district court's authority because it imposed restitution based on charges and conduct for which Maturin was not convicted.

## II.

This court ordinarily reviews the legality of a restitution order de novo. See, e.g., United States v. Adams, 363 F.3d 363, 365 (5th Cir. 2004). Because Maturin failed to object to either the amount of restitution recommended in the pre-sentence investigation report or the district court's restitution order, however, we review Maturin's claim only for plain error. See United States v. Howard, 220 F.3d 645, 647 (5th Cir. 2003) ("There being no objection to the order of restitution at sentencing, we review for plain error.").

5

Under the plain error standard, this court can correct an error in the district court proceedings only if the error was clear or obvious and affected the substantial rights of the defendant.  See United States v. Coil, 442 F.3d 912, 916 (5th Cir. 2006) ("To establish plain error, [the defendant] must show that (1) there is an error, (2) the error is clear or obvious, and (3) the error affects his substantial rights."); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").  If those conditions are met, this court may, in its discretion, grant the defendant relief if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Ibarra-Zelaya, 465 F.3d 596, 606 (5th Cir. 2006) (citing United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005)).

## III.

The trial court ordered Maturin to pay restitution in the amount of $164,988.98, representing the total amount of funds that Maturin deposited into the concealed account between August 5, 1998 and April 1, 1999.  In essence, the district court's restitution order covered all of the assets of the bankruptcy estate that Maturin was alleged to have fraudulently

concealed.  Maturin asserts that the restitution order was unlawful because it imposed restitution in excess of the amount of loss caused by the offense for which Maturin was convicted, count 1 of the indictment.

The district court's award of restitution in this case is governed by 18 U.S.C. § 3556, which provides that "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with [18 U.S.C. §] 3663A, and may order restitution in accordance with [18 U.S.C. §] 3663."  18 U.S.C. § 3663A, the Mandatory Victims Restitution Act of 1996 ("MVRA"), provides that, when a defendant has been convicted of any of a list of specified offenses, including "any offense committed by fraud or deceit," the sentencing court "shall order . . . that the defendant make restitution to the victim of the offense."  The MVRA's discretionary counterpart, the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, provides that, in cases where the MVRA does not apply, the court "may order" a defendant convicted of an offense to "make restitution to any victim of such offense."  The parties in this case agree that the MVRA's mandatory restitution provisions apply to Maturin's

7

conviction.[1]

The general rule is that a district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted. See Hughey v. United States, 495 U.S. 411, 413 (1990) ("Hughey I") ("[T]he language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.").[2]

The MVRA defines a "victim" of the offense as "a person directly and proximately harmed as a result of the commission

_____

[1]A district court may also order restitution as a condition of supervised release. See 18 U.S.C. § 3583(d). Although the district court did not make clear the statutory basis for its award of restitution, the government does not argue that 18 U.S.C. § 3583(d) increases the district court's authority to impose restitution in any way that is relevant to this case, and this court has previously suggested that section 3583(d) cannot be used to circumvent otherwise applicable substantive limitations on an award of restitution. See United States v. Love, 431 F.3d 477, 480-81 (5th Cir. 2005).

[2]Although the Supreme Court's decision in Hughey I predated the enactment of the MVRA, and the VWPA was amended in several respects after Hughey I, this court has long recognized that: (1) the Hughey I court's holding that restitution must be limited to losses caused by the offense of conviction remains good law, see United States v. Hughey, 147 F.3d 423, 437 (5th Cir. 1998) ("Hughey II") ("That part of Hughey which restricted the award of restitution to the limits of the offense . . . still stands."); and (2) the rule of Hughey I also applies to cases arising under the MVRA. See United States v. Mancillas, 172 F.3d 341, 343 (5th Cir. 1999); Adams, 363 F.3d at 366.

of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). The MVRA also, however, broadens the definition of the term "victim" for any "offense that involves as an element a scheme, conspiracy, or pattern of criminal activity" to include "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Id. Thus, this court has held "that where a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme." United States v. Cothran, 302 F.3d 279, 289 (5th Cir. 2002) (emphasis added) (internal quotation marks omitted); Hughey II, 147 F.3d at 437 ("The statute now provides that when the subject offense involves a scheme, conspiracy, or pattern of criminal activity, restitution may be awarded to any person who is directly harmed by the defendant's course of criminal conduct."). When the count of conviction does not require proof of a scheme, conspiracy, or pattern, however, as noted above, the defendant "is only responsible to pay restitution for the conduct underlying the offense for which he has been convicted." Adams, 363 F.3d at 366; Mancillas, 172 F.3d at 343.

The VWPA provides an exception to these general rules for

cases in which the defendant has agreed to a particular award of restitution, as it provides that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."  18 U.S.C. § 3663(a)(3); see also id. § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.").

In this case, it is undisputed that the district court's award of restitution in the amount of $164,988.98 goes well beyond the losses that were caused directly by the conduct for which Maturin was actually convicted.  Count 1, the count to which Maturin pleaded guilty, simply charged that he deposited $58,384.43 belonging to the bankruptcy estate into the concealed account.  Accordingly, to determine the propriety of the district court's restitution order, this court must consider whether the offense for which Maturin was convicted includes as an element a scheme, conspiracy, or pattern of activity, and/or whether the parties agreed in Maturin's plea agreement that he would be subject to restitution for losses based on the dismissed counts of the indictment.

**A.**

Both the statutory language of the MVRA and this court's

prior decisions make it plain that a defendant's conviction on one count can support a broad restitution award encompassing additional losses only if the count of conviction requires proof of a scheme, conspiracy, or pattern of criminal activity as an element. See id. § 3663A(a)(2); Cothran, 302 F.3d at 289. It is unmistakably clear, however, from the plain language of 18 U.S.C. § 152(1) — the statute under which Maturin was convicted — that the statute does not have "as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663A(a)(2). 18 U.S.C. § 152(1) makes it unlawful to "knowingly and fraudulently conceal[] . . . in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor." Nothing in the statutory text so much as hints that the government must prove a scheme, conspiracy, or pattern of activity in order to convict. In addition, none of the documents supporting Maturin's conviction indicates that the district court, the government, or Maturin believed that such proof was necessary. In fact, the words "scheme," "conspiracy," and "pattern" do not appear anywhere in the indictment, the plea agreement, the factual basis for Maturin's

guilty plea, or Maturin's acknowledgement of the elements of the offense.[3]

We therefore conclude that 18 U.S.C. § 152(1) does not have as an element proof of a scheme, conspiracy, or pattern of criminal activity, and, accordingly, Maturin's conviction under that section cannot, without more, support the district court's restitution order. See United States v. Lawrence, 189 F.3d 838, 847 (9th Cir. 1999) (noting that "bankruptcy fraud" under 18 U.S.C. § 152 "contain[s] no elements relating to scheme, conspiracy, or pattern"); cf. United States v. Randle, 324 F.3d 550, 556-57 (7th Cir. 2003) (noting government's concession "that proof of scheme, conspiracy, or pattern is not an element of the offense of bankruptcy fraud").[4]

---

[3]According to the Fifth Circuit pattern jury instructions, to convict under 18 U.S.C. § 152(1), the government must prove: (1) "That there existed a proceeding in bankruptcy;" (2) "That certain property or assets belonged to the bankrupt estate;" (3) "That defendant concealed such property from the creditors [custodian] [trustee] [marshal] [some person] charged with control or custody of such property;" and (4) "That the defendant did so knowingly and fraudulently." Fifth Circuit Pattern Jury Instructions: Criminal § 2.10 (brackets in original).

[4]Because the count of conviction does not require proof of a scheme, conspiracy, or pattern of criminal activity, the parties' extensive discussions of this court's decisions in Adams and Cothran are inapposite. In each of those cases, the defendant was convicted of a crime that had a scheme or conspiracy as an element, and it was this court's task to determine the scope of the defendant's scheme or conspiracy in the particular case. See Adams, 363 F.3d at 366-67; Cothran, 302 F.3d at 289. In this case, we have no occasion to consider the scope of any claimed scheme or conspiracy.

**B.**

The district court could nevertheless order restitution for losses in excess of those caused by Maturin's conduct in connection with count 1 of the indictment if Maturin and the government agreed that Maturin would pay restitution for all of the assets of the bankruptcy estate that were deposited into the concealed bank account. See 18 U.S.C. § 3663(a)(3). The plea agreement, however, makes no mention of restitution, and there is simply no evidence in the record from which the district court or this court could find such an agreement.[5]

_____

[5]The government's reliance on United States v. Arnold, 947 F.2d 1236, 1238 (5th Cir. 1991), for the proposition that a defendant's failure to object to the district court's restitution order constitutes evidence that the defendant agreed to pay the full amount of restitution ordered by the district court, is misplaced. Arnold is readily distinguishable from this case. In Arnold, the defendant's plea agreement expressly noted that, although he was pleading guilty to only one count of the indictment, he had participated in a single fraudulent scheme that resulted in losses of $669,390. Id. In addition, the defendant, inter alia, reiterated his understanding that his guilty plea and conviction included the larger scheme to defraud in a sworn statement to the district court. Id. Thus, there was substantial affirmative evidence that the defendant in Arnold had agreed to pay restitution in the amount of $669,390. In those circumstances, this court found that the defendant's failure to object to the pre-sentence investigation report's restitution recommendation or the district court's restitution order constituted additional evidence of the defendant's agreement to pay the full amount of restitution ordered. Id.

In this case, by contrast, neither Maturin's plea agreement nor the factual basis mentions restitution, and the district court did not discuss restitution with Maturin during his guilty plea colloquy. We do not read Arnold to hold that a defendant's failure to object to the pre-sentence investigation report or the district court's restitution order is sufficient to establish that the

Although we have found that the district court erred when it ordered that Maturin pay restitution for losses caused by conduct other than the conduct for which he was convicted, this court can correct that error only if the error is plain, it affected Maturin's substantial rights, and it seriously affected the fairness, integrity, or public reputation of judicial proceedings.  See Ibarra-Zelaya, 465 F.3d at 606.

An error is considered plain, or obvious, for purposes of this court's plain error inquiry only if the error is clear under existing law.  United States v. Olano, 507 U.S. 725, 734 (1993) (stating that a "court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law").  While this court has never expressly determined that the crime of concealing assets in a bankruptcy proceeding does not have a scheme, conspiracy, or pattern of criminal activity as an element, as we discussed above, it is indisputably clear from a reading of the plain statutory language, as well as this court's pattern jury instructions, that the statute contains no such element.  We therefore find

---

defendant agreed to pay the full amount of restitution that was ultimately ordered where, as here, the record is otherwise devoid of evidence of any agreement between the government and the defendant concerning restitution.

that the district court's error was plain.

We also find that the error affected Maturin's substantial rights and the fairness, integrity, or public reputation of judicial proceedings. An error affects the defendant's substantial rights if "it affected the outcome of the trial court proceedings." United States v. Alarcon, 261 F.3d 416, 423 (5th Cir. 2001); United States v. Inman, 411 F.3d 591, 595 (5th Cir. 2005) (holding that "[t]he restitution order affected [the defendant's] substantial rights because the outcome of the district court's proceedings would have been different if the error had not occurred"). In this case, Maturin was ordered to pay restitution of $164,988.98 as a result of the district court's legal error about the scope of its authority to order restitution; without the error, the court could not have ordered restitution in an amount greater than $54,384.43. Thus, we easily conclude that the error, which increased the amount of restitution that Maturin was ordered to pay by over $100,000, affected the outcome of the district court proceedings and Maturin's substantial rights. See United States v. Austin, 479 F.3d 363, 373 (5th Cir. 2007) ("When a defendant is ordered to pay restitution in an amount greater than the loss caused, the error affects substantial rights as

15

well as the fairness and integrity of the judicial proceeding."); <u>Inman</u>, 411 F.3d at 595 (vacating restitution award under plain error standard where amount awarded exceeded permissible award by over $70,000).

## CONCLUSION

For the reasons stated above, we VACATE the district court's restitution order and REMAND the case to the district court for further proceedings consistent with this opinion.