REVISED APRIL 8, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 18, 2009

Charles R. Fulbruge III
Clerk

No. 08-10287
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

EMMANUEL BOBBY EDET, ALSO KNOWN AS BOB EDET

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CR-46-2

Before JONES, Chief Judge, and DENNIS and HAYNES, Circuit Judges.
PER CURIAM:[*]

Emmanuel Bobby Edet ("Edet") appeals the sentence imposed following his guilty plea conviction for conspiracy to commit health care fraud and pay illegal remuneration. In pleading guilty, Edet admitted participating in a scheme in which a recruiter solicited Medicare beneficiaries to see Dr. Lloyd McGriff ("Dr. McGriff"). Dr. McGriff then signed Certificates of Medical Necessity ("CMNs") certifying that the beneficiaries needed a K0011 power

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

wheelchair. Edet paid Dr. McGriff a kickback for each CMN Dr. McGriff provided. Edet would then provide the beneficiary with the K0011 power wheelchair and accessories and bill Medicare. Edet admitted that he "falsely represented to Medicare that the beneficiaries were qualified to receive" the power wheelchairs and accessories. In at least one instance, Edet provided a beneficiary with a less expensive scooter but billed Medicare for a K0011 power wheelchair.

We review a sentencing decision for reasonableness, applying the abuse-of-discretion standard. United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008). This standard applies whether the sentence is inside or outside the guidelines range. Id. We must first ensure that the district court did not commit procedural error. Id. This review includes an assessment of whether the district court improperly calculated the guidelines range. Id. A district court's interpretation or application of the Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. Id.

For the first time on appeal, Edet argues that the district court erred by calculating his offense level under U.S.S.G. § 2B1.1 instead of U.S.S.G. § 2B4.1. He acknowledges that § 2B1.1 is the proper guideline for healthcare fraud, but maintains that § 2B4.1, the guideline for commercial bribery, was the proper guideline to apply because the loss amount evidence was based upon the kickbacks paid to Dr. McGriff.

Because Edet did not challenge the use of § 2B1.1 to calculate his offense level in the district court, review of this issue is for plain error. See United States v. Price, 516 F.3d 285, 286-87 (5th Cir. 2008). To show plain error, Edet must show an error that is clear or obvious and that affects his substantial rights. United States v. Baker, 538 F.3d 324, 332 (5th Cir. 2008). If he makes such a showing, we have the discretion to correct the error but will do so only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

Because Edet's offense of conviction was a multiple object conspiracy, it was treated under the Guidelines as if Edet had been convicted of separate counts of conspiracy to commit health care fraud and conspiracy to pay illegal remuneration. See U.S.S.G. § 1B1.2(d). Pursuant to U.S.S.G. § 2X1.1(a), the offense level for a conspiracy offense is found by using the offense level for the substantive offense. Edet's substantive health care fraud offense was a violation of 18 U.S.C. § 1347, and the proper guideline for violations of that statute was § 2B1.1. U.S.S.G. App'x A. Edet's substantive payment of illegal remuneration offense was a violation of 42 U.S.C. § 1320a-7b(b)(2), and two guidelines are listed for violations of that statute, § 2B1.1 and § 2B4.1. U.S.S.G. App'x A.

Appendix A provides that if two guidelines are listed for a statute, the court should use the guideline most appropriate for the offense conduct. Edet asserts that § 2B1.1 is only listed as an appropriate guideline for violations of 42 U.S.C. § 1320a-7b(b)(2) because § 2B4.1 cross-references the loss amount table contained in § 2B1.1. The argument is without merit as Appendix A specifically provides that some statutes have more than one possible guideline and because several statutes have § 2B4.1 as their only listed guideline, belying the contention that § 2B1.1 is only listed with § 2B4.1 due to the cross-reference to the loss amount table contained in § 2B1.1. See U.S.S.G. App'x A.

While the payment of kickbacks was part of Edet's criminal activity, it was part of a larger scheme to commit health care fraud by soliciting Medicare beneficiaries, obtaining CMNs for K0011 power wheelchairs for the beneficiaries, and fraudulently billing Medicare for the K0011 power wheelchairs. As Edet's primary offense was health care fraud, § 2B1.1 was the more appropriate guideline for his substantive offense of payment of illegal remuneration. See U.S.S.G. App'x A. As the proper guideline for the calculation of Edet's offense level for both of his substantive offenses was § 2B1.1, the district court correctly used § 2B1.1 to calculate Edet's offense level. See § 2X1.1(a).

Edet next argues that the district court's loss amount calculation was erroneous. He maintains that under § 2B1.1, comment. n.3(F)(ii), the loss amount in cases involving government benefits is the amount of the benefit received less the amount of the benefit that was intended to be given. He asserts that because the Government did not provide evidence that the K0011 power wheelchairs were not medically necessary for the beneficiaries who received them, the Government did not prove that there was any benefit received more than the amount that was intended. Edet argues that the Government was required to prove that Medicare was fraudulently induced into paying claims that were not medically necessary in order to enhance his sentence based upon the amount of the payments from Medicare. Because the Government's evidence of loss amount was based upon the kickbacks paid to Dr. McGriff, Edet maintains that the loss amount was limited to the amount of the kickbacks.

From the evidence presented at sentencing and Edet's admissions, the district court could reasonably infer that the signed CMNs from Dr. McGriff were fraudulent and that Dr. McGriff signed them because he received kickbacks, not because the beneficiaries had a medical need for K0011 power wheelchairs. See United States v. Rodriguez, 897 F.2d 1324, 1326 (5th Cir. 1990). Under § 2B1.1, comment. n.3(F)(ii), the amount of loss in a government benefit case is the amount of benefit received less the amount of benefit intended to be paid. As the claims Edet submitted based on Dr. McGriff's CMNs were fraudulent, the intended benefit was zero, and the district court properly concluded that the loss amount was the total amount that Medicare paid to Edet on those claims. See § 2B1.1, comment. n.3(F)(ii). Furthermore, pursuant to § 2B1.1, comment. n.3(F)(v), cases involving goods for which government agency approval is required and obtained by fraud, the loss amount is the amount paid for the goods without any credit for the value of the goods provided. Thus, the full amount that Medicare paid Edet on the claims submitted on the basis of the fraudulent CMNs signed by Dr. McGriff was properly determined to be the loss

amount. See § 2B1.1, comment. n.3(F)(v). Edet has not shown that the district court's loss amount determination was clearly erroneous. See United States v. Messervey, 317 F.3d 457, 464 (5th Cir. 2002).

For the first time on appeal, Edet argues that the district court plainly erred by ordering him to pay $446,404.95 in restitution. He maintains that the amount of the restitution ordered was improper because it was not based upon Medicare's actual losses. Edet asserts that the Government was required to show that the beneficiaries who received the power wheelchairs as a result of the CMNs signed by Dr. McGriff did not have a medical need for them.

Ordinarily, this court reviews the propriety of the amount of a restitution award for an abuse of discretion. United States v. Mann, 493 F.3d 484, 498 (5th Cir. 2007). As Edet concedes, however, our review is for plain error because no objection was lodged in the district court. See United States v. Maturin, 488 F.3d 657, 659–60 (5th Cir. 2007).

The district court awarded restitution to Medicare pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. Under the MVRA, the district court was required to order that Edet pay restitution to Medicare for the full amount of Medicare's losses. 18 U.S.C. § 3664(f)(1)(A); United States v. Klein, 543 F.3d 206, 215 (5th Cir. 2008). If Medicare would have been required to pay for the wheelchairs for the beneficiaries even in the absence of Edet's criminal offenses, the amounts Medicare paid for the wheelchairs would not be considered an actual loss to Medicare. See Klein, 543 F.3d at 215.

There was evidence from which the district court could determine that the claims made by Edet based upon the CMNs signed by Dr. McGriff were fraudulent and that Medicare would not have paid anything for power wheelchairs to those beneficiaries in the absence of Edet's criminal activity. Accordingly, because Edit only speculates, without having offered evidence below, that some of the wheelchairs might have been legitimately charged to

Medicare, the court did not err in finding that the actual loss to Medicare was the total amount that it paid to Edet on those claims. Cf. Klein, 543 F.3d at 215. Based on this record, Edet has not shown that the district court committed plain error by ordering him to pay restitution in the amount of $446,404.95. See Mann, 493 F.3d at 498-99.

AFFIRMED.