# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 2, 2013

No. 10-10743

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

ROBERT JOHN MASON, EDWIN TERRENCE BELL, REJIS LAMONT
WILLIAMS, MICHAEL LEWIS ANDREWS, JAMES EDWARD JONES,
KEVIN RAY SANDERSON, JANICE LITTLE SHEPHERD, ERIC RULACK
FARRINGTON, JR.,

Defendants – Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Following a jury trial, eight defendants were found guilty of numerous violations arising out of their participation in a wide-ranging mortgage fraud scheme. On appeal, the convicted defendants assert various arguments challenging: (1) the sufficiency of the evidence against them; (2) instructions given, and not given, to the jury; (3) the district court's interpretation and application of the Sentencing Guidelines; (4) the admission of summary charts under Federal Rule of Evidence 1006; and (5) the district court's denial of a *Batson* challenge. After a thorough review of the record, we find no merit to any

No. 10-10743

of these arguments. Accordingly, we AFFIRM the convictions and sentences of Robert John Mason, Edwin Terrence Bell, Rejis Lamont Williams, James Edward Jones, Kevin Ray Sanderson, Janice Little Shepherd, and Eric Rulack Farrington, Jr.

Michael Lewis Andrews, however, raises an additional argument with respect to the restitution and forfeiture component of his sentence. For reasons further explained below, the district court plainly erred in calculating the amount of restitution and forfeiture applicable to Andrews. As such, we AFFIRM his conviction, but VACATE the forfeiture and restitution component of his sentence and REMAND to the district court for recalculation in the light of this opinion.

I.

This case arose from a complex mortgage fraud scheme lasting at least from March 2002 until January 2006. Ten defendants were charged in a fifty-count indictment alleging: (1) Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1343); (2) Bank Fraud and Aiding and Abetting in violation of 18 U.S.C. §§ 1344, 2; (3) Wire Fraud and Aiding and Abetting in violation of 18 U.S.C. §§ 1343, 2; (4) Money Laundering and Aiding and Abetting in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 2; and (5) Engaging in a Monetary Transaction with Criminally Derived Property and Aiding and Abetting in violation of 18 U.S.C. §§ 1957(a), (d)(1), 2. Two defendants subsequently pled guilty. And, after an approximately seven-week trial, the jury reached a split verdict with respect to the other eight defendants, acquitting individuals on some counts and convicting them on others. This appeal timely followed.

Andrews had a relatively minor role in the scheme; he recruited individuals to invest in the scheme and brokered loans for two of the properties.[1]

---

[1] The two properties were 7012 Creek Bend Road ("Creek Bend") and 1509 Appalachian Drive ("Appalachian").

No. 10-10743

He profited through payments made to Second Chance Mortgage based on the two loans he brokered. Andrews, however, was acquitted on Count 1 of the indictment, which alleged the conspiracy charge. Instead, Andrews was convicted only on Counts 16 and 17, which specifically described the Creek Bend transaction and stated that crime. He was sentenced to 24 months of imprisonment, ordered to pay $108,659.15 in mandatory restitution, and ordered to forfeit $121,434.64.

## II.

Andrews argues that the district court erred in calculating the amount of loss subject to restitution and the proceeds subject to forfeiture. He reminds us that he was found guilty only on the Creek Bend transaction; he was acquitted on all other charges. He emphasizes that his acquittal on Count 1 of the indictment (charging him with conspiracy with the other defendants) limits the applicable restitution and forfeiture amounts to the specific funds associated with the single transaction—Counts 16 and 17—of which he was convicted. Nevertheless, the district court, in calculating the losses to the victims for which he was accountable, included the amount of loss from a later-in-time transaction, the Appalachian transaction, which was unrelated to his counts of conviction.

Because Andrews did not raise this argument before the district court, we review for plain error. *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005). As such, Andrews must show: "(1) there is an error, (2) the error is plain, and (3) the error affects substantial rights." *Id.* If all three requirements are met, "we will exercise our discretion to correct the error if it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

"A defendant sentenced under the Mandatory Victim Restitution Act ('MVRA') is only responsible for paying restitution for the conduct underlying the offense for which he was convicted." *Id.* "[W]here a fraudulent scheme is an

element of the conviction, the court may award restitution for actions pursuant to that scheme." *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007) (citation omitted).  But, "restitution for the underlying scheme to defraud is limited to the *specific* temporal scope of the indictment." *Inman*, 411 F.3d at 595.  And, in *Inman*, we concluded that the inclusion of "transactions that were not alleged in the indictment and occurred over two years before the specific temporal scope of the indictment," constituted plain error.  *Id.*

As iterated throughout this opinion, Andrews was acquitted of the conspiracy charge contained in Count 1, which was the only count involving all eleven property transactions that the indictment alleged took place between March 2002 and January 2006.  He was convicted only for Wire Fraud and Aiding and Abetting based on wire transfers related to the sale of the Creek Bend property on December 19, 2005.  It is true, as the government points out, that Counts 16 and 17 of the indictment "reallege[d] and incorporate[d] by reference herein the allegations contained in the Introduction of this indictment."  The government argues that the district court committed no error, basing its argument largely on the incorporation of the indictment introduction, which stated that the scheme lasted "[f]rom at least in or about March 2002, and continuing in or about January 2006."  As such, the government contends that *Inman* is distinguishable from the instant case, where the Appalachian transaction took place before January 2006.  Having failed to raise an objection below, Andrews asserts that the inclusion of the later-in-time Appalachian transaction rises to the level of plain error because: (1) the error is clear; (2) it affected his substantial rights because he was ordered to pay an additional $74,619.12; and (3) this court should exercise its discretion because he was acquitted with respect to the mortgage fraud conspiracy, but he is still being ordered to pay restitution for a transaction he was not convicted of participating in.

No. 10-10743

In *United States v. Sharma*, 703 F.3d 318 (5th Cir. 2012), we explained that, "An award of restitution cannot compensate a victim for losses . . . caused by conduct that falls outside *the temporal scope of the acts of conviction*." *Id.* at 323 (citing *Inman*) (emphasis added). In *Sharma*, the defendants pled "guilty to only two of the sixty-four counts of indictment," which related to a fraudulent scheme to bill insurers for a specific type of medical procedure. *Id.* As such, we held that the district court erred in imposing restitution beyond losses specifically attributable to fraudulent billing for the particular procedure at issue in those counts. *See id.* at 323-24. *Sharma* thus informs the instant case, where Andrews's conviction on Counts 16 and 17 involved his participation in the fraudulent Creek Bend transaction and nothing else. The Appalachian transaction was not part of Andrews's offense of conviction.[2] The district court, therefore, erred in including the amount of loss from the Appalachian transaction in Andrews's mandatory restitution order. And, moreover, we conclude that such error was plain given our prior statement that, "The MVRA limits restitution to the actual loss directly and proximately caused by the defendant's *offense of conviction*."[3] *Id.* at 323.

Having concluded that the district court plainly erred, we next must determine whether the error affected Andrews's substantial rights. *Inman*, 411 F.3d at 595. If the district court properly had limited the restitution order to the

---

[2] The government has cited no authority, and we have not located any, analogous to the instant case where the defendant was acquitted of conspiracy but still ordered to pay restitution and forfeiture for a transaction charged only as part of the overarching conspiracy; here, the Appalachian transaction is mentioned expressly in only Count 1 of the indictment, unlike the Creek Bend transaction which is charged in Counts 1 and 16–17. Thus ordering Andrews to pay restitution and forfeiture for the Appalachian transaction suggests that the district court concluded he in fact was a participant in the conspiracy, despite the jury's contrary conclusion. Such a finding is improper and creates inconsistency in the jury verdict, which is entitled to the utmost respect.

[3] Furthermore, in its brief, the government argues only that the district court committed no error—plain or otherwise.

5

No. 10-10743

amount of loss caused by the Creek Bend transaction, Andrews would only be ordered to pay $34,040.03 in restitution. Inclusion of the Appalachian transaction thus resulted in Andrews being ordered to pay an additional $74,619.12. Like *Inman*, "[t]his variance of over $70,000 merits correction" as it "affected the outcome of the district court proceedings" with respect to the judgment against Andrews. *Olano*, 507 U.S. at 734; *Inman*, 411 F.3d at 595.

Furthermore, our failure to correct such an error would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotation marks omitted); *see also Inman*, 411 F.3d at 595. Andrews was ordered to reimburse more than $70,000 in funds for a transaction he was not convicted of participating in; indeed, he was acquitted of the only count expressly charging criminal activity with respect to the Appalachian transaction. Failing to correct such an error would, in our opinion, constitute manifest injustice in the minds of most jurists. We, therefore, find that Andrews has met the stringent plain error standard with respect to the calculation of his restitution order.[4] On remand, the district court should limit Andrews's restitution order to the amount of loss suffered as a result of the Creek Bend transaction, excluding any proceeds associated with the Appalachian transaction.

### III.

For the reasons stated above, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

[4] We also find that the district court committed plain error in calculating the applicable forfeiture amount, and that the error affected Andrews's substantial rights. Andrews's conviction on Counts 16 and 17 required forfeiture of the proceeds from the Creek Bend transaction. Indeed, the district court's judgment states that Andrews is ordered to forfeit $121,434.64, "representing the amount of proceeds obtained as a result of the offenses in Count 16 and 17." On remand, the forfeiture order should be corrected to reflect only those proceeds obtained from the Creek Bend transaction, thereby excluding any proceeds linked with the Appalachian transaction.